**WO**                                                                                                           SC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Wilson Overturf, ) | No. CV 11-1856-PHX-GMS (DKD) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Janice K. Brewer, et al., ) | |
| Defendants. ) | |

Plaintiff George Wilson Overturf, who is confined in the Arizona State Prison Complex, Central Unit, in Florence, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed for failure to state a claim with leave to amend. (Doc. 1, 7.) Plaintiff filed a First Amended Complaint, which the Court also dismissed for failure to state a claim with leave to amend. (Doc. 17.) Plaintiff then requested and was granted several extensions of time to file a second amended complaint. (Doc. 22, 24, 27, 29, 31, 32, 34, 35.) Plaintiff has filed a Second Amended Complaint, a motion for judgment on the pleadings, and a motion for reconsideration. (Doc. 38, 39, 40.) He has also filed a motion for injunctive relief and to receive a service packet. (Doc. 39, 40.) The Court will dismiss the Second Amended Complaint for failure to state a claim and this action and will deny the motions as moot.

## I.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised

1   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
2   be granted, or that seek monetary relief from a defendant who is immune from such relief.
3   28 U.S.C. § 1915A(b)(1), (2).

4         A pleading must contain a "short and plain statement of the claim *showing* that the
5   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not
6   demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
7   unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
8   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
9   statements, do not suffice." Id.

10        "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
11  claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,
12  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content
13  that allows the court to draw the reasonable inference that the defendant is liable for the
14  misconduct alleged." Id. "Determining whether a complaint states a plausible claim for
15  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
16  experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual
17  allegations may be consistent with a constitutional claim, a court must assess whether there
18  are other "more likely explanations" for a defendant's conduct. Id. at 1951.

19        But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
20  must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th
21  Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards
22  than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89,
23  94 (2007) (*per curiam*)).

24  **II.   Second Amended Complaint**

25        Plaintiff alleges two counts for the denial of constitutionally adequate medical care
26  and violation of his Fourteenth Amendment rights. Plaintiff sues the following current or
27  former employees of the Arizona Department of Corrections (ADC): Director Charles L.
28  Ryan; Tucson Complex Facility Health Administrator (FHA) H. Valenzuela; Florence

- 2 -

1  Complex FHA Dennis Kendall; Lewis Complex Nurse Romero; Lewis, Tucson, and Florence
2  Complexes Nurse French; Lewis Complex Pharmacy Technician A. Swindle; and Lewis
3  Complex Corrections Officer (CO) III Chavez.  Plaintiff seeks declaratory, injunctive,
4  compensatory, and punitive relief.

5  Except as otherwise indicated, Plaintiff alleges the following: at relevant times,
6  Plaintiff suffered from glaucoma, macular degeneration, and cataracts.  On June 15, 2010,
7  shortly after Plaintiff was incarcerated by ADC, Dr. Vinluan changed Plaintiff's prescription
8  for Ocuvite with lutein to Pro-Sight; Plaintiff contends that Pro-Sight is not as effective as
9  Ocuvite.  Dr. Vinluan continued Plaintiff's prescriptions for Flunisolide, Timolol Ophth,
10 multivitamins with iron, multivitamins without iron, and artificial tears, all with an expiration
11 date of December 12, 2010.[1]

12 On August 13, 2010, Plaintiff was placed in the Bachman Detention Unit, part of the
13 Lewis Complex.  (Doc. 38 at 3D.)  On August 15, 2010, Plaintiff sent a Health Needs
14 Request (HNR) because he had not received multivitamins with iron for five days.[2]  On
15 September 7, 2010, Plaintiff filed an informal resolution concerning his inability to obtain
16 refills of medications.  Under prison grievance procedures, CO III Chavez was to provide a
17 response to an informal resolution within 15 work days, but did not.  On September 23, 2010,
18 Plaintiff submitted a second informal resolution because Chavez had not responded to the
19 first.  Chavez did not respond to the second informal resolution.

---

[1] Plaintiff claims that while a prescription is in effect, refills are provided upon request until the expiration date of the prescription.  That assertion is implausible because it would enable an inmate to obtain as many refills of a medication as he chose prior to the expiration date of the medication and is inconsistent with the practice outside of prison.  Rather, refills must be specifically authorized by a physician to avoid medication abuse. Plaintiff's reference to an ASPC-Tucson Pharmacy prescription label stating, "Turn in for refill before 04/23/12 Order Expiration 04/23/12," is not to the contrary.  Plaintiff does not otherwise allege that the prescriptions at issue provided for any refills beyond the initial filling.

[2] Plaintiff does not allege why multivitamins with iron and multivitamins without iron would be prescribed at the same time.

1    From September 2010 on, Plaintiff repeatedly requested to be seen by an
2  ophthalmologist because his vision was getting worse and because of problems with his
3  medications. (Id. at 3E.) On September 23, 2010, Plaintiff received a memorandum from
4  Lewis Complex Pharmacy Technician Swindle in which she told Plaintiff his prescriptions
5  for eye vitamins, Timolol Ophth, and Flunisolide were not refillable.[3] Plaintiff contends that
6  Swindle's refusal to refill the prescriptions constituted deliberate indifference because the
7  prescriptions were in his medical file and computerized records. Plaintiff sent additional
8  HNRs on September 27 and October 5 and 10, 2010, "to no avail." (Id. at 3A.) On
9  September 28, 2010, Plaintiff submitted an informal resolution to Sergeant Hutchinson and
10 Captain Yielding and a formal grievance to the grievance co-ordinator, but never received
11 a response. Plaintiff contends that Chavez never forwarded his grievance to the grievance
12 coordinator.

13   On September 28, 2010, Nurse Romero told Plaintiff's "neighbor" in a loud voice that
14 could be heard throughout the Unit, that she and "Health Service Administrator Damien
15 Dowdle had decided to cancel [Plaintiff's] prescriptions until [he] confessed to sex crimes
16 only they imagined."[4] (Id. at 3B.) According to Plaintiff, Romero stated that, "He has a
17 choice; he can go blind or confess to being a child molester." (Id.) Plaintiff denies ever
18 being charged or convicted of a sex offense. (Id.) Plaintiff states,

> Upon information and belief if someone convicts another inmate of their sex crime they don't have to register as a sex offender. This is called "Snitch on three, you'll go free." Damien Dowdle isn't a Health Service Administrator; he is a child-molester, homosexual and confidential informant.

---

[3] Plaintiff contends that they were refillable on request because the prescriptions did not expire until December 12, 2010. For the reasons discussed in n.1, the Court finds the allegation that Plaintiff was entitled to refills upon request without authorization for refills implausible.

[4] Dowdle is an ADC inmate and not an ADC Health Service Administrator. See http://www.azcorrections.gov/Inmate_DataSearch/results_Minh.aspx?InmateNumber=088627&LastName=DOWDLE&FNMI=D&SearchType=SearchInet (last visited Nov. 19, 2012).

1  (Id.) Plaintiff claims that he went without medications for five weeks because of the
2  "misguided opinions" of Nurses Romero and French, and Pharmacy Technician Swindle.
3  (Id.) Plaintiff identifies the specific periods during which he did not receive medications as
4  August 10-27, 2010; September 5-28, 2010; and November 21-27, 2010.

5  Plaintiff asserts that Chavez never responded to his inmate letters or informal
6  resolutions and never forwarded his grievances. Further, until October 27, 2010, when
7  Plaintiff got in a fight with his cell-mate over a pencil, inmates in his Unit were unable to
8  purchase pen fillers or pencils. According to Plaintiff, it was common knowledge that
9  Chavez had a policy of taking away pens and pencils of incoming inmates to eliminate
10 paperwork for which he would otherwise be responsible. At about the same time as the fight
11 with his cell-mate, HNR forms stopped being issued in quadruplicate and were instead issued
12 as a one-page form; Plaintiff speculates that the change was motivated by a desire to prevent
13 inmates from proving they had complied with the grievance process.

14 On December 1, 2010, Plaintiff was moved to the Morey Detention Unit, also part of
15 the Lewis Complex. Plaintiff filed another informal resolution. On December 9, 2010,
16 Nurse Practitioner Abbe King prescribed eye vitamins, multivitamins without iron, Timolol
17 Ophth, and Flunisolide. King declined to prescribe multivitamins with iron.

18 On December 13, 2010, Nurse French began a program of character assassination
19 against Plaintiff to "deny or limit" health care at the Lewis Complex. According to Plaintiff,
20 French had been molested as a child and took it upon himself "to make people suffer for what
21 happened to him; even to the point of creating false paperwork."[5] (Id. at 3D.) On January
22 11, 2011, Plaintiff filed a grievance.

23 On January 20, 2011, Plaintiff was transferred to the Tucson Complex. (Id. at 3E.)

---

25  [5] Plaintiff adds that there is nothing in Department Order 1101 "that states that self-
26 important, delusional crackpots like Romero and French or malfeasant malevolent
   individuals like Swindle can cancel medications on cavalier whims. To have Romero and
27 French try to incite other persons in their madness is ludicrous!" (Id. at 3D.) As discussed
   herein, Plaintiff fails to allege facts to support that Romero, French, or Swindle cancelled
28 medications.

- 5 -

1  On February 18, 2011, he filed another grievance, apparently about not being prescribed the same medications as previously.[6] In a March 4, 2011 response, Tucson Complex FHA Valenzuela told Plaintiff that "providers here decide differently from previous providers." (Id. at 3E.) According to Plaintiff, on March 17, 2011, Nurse French brought false paperwork about Plaintiff to the Tucson Complex. (Id. at 3D.) On March 24, 2011, Plaintiff was told that he was scheduled to be seen by ophthalmology about his vision and for sunglasses because of light sensitivity resulting from his macular degeneration.

In April 2011, Plaintiff was transferred to the Florence Complex.[7] At some point, the Florence Complex FHA, Dennis Kendall, opined that Plaintiff's vision had not been damaged. Plaintiff appealed Kendall's opinion or decision. On May 17, 2011, Ryan affirmed Kendall's decision stating there was no proof that Plaintiff's vision had been "irreparably damaged" or had deteriorated since August 2010. Plaintiff claims there was no proof because he had not been examined by an ophthalmologist since arriving at ADC, despite repeated requests since September 2010. According to Plaintiff, on May 19, 2011, Nurse French brought false paperwork about him to the Florence Complex. (Id. at 3D.)

On June 10, 2011, Plaintiff's prescription for artificial tears was placed on no refill status by Dr. Steinhauser although Steinhauser had not examined Plaintiff and provided no explanation.

On August 24, 2011, Plaintiff filed an informal resolution about medications, ophthalmology, and "cavalier attitude of health services staff." (Id. at 3F.) According to Plaintiff, ophthalmologists visited the Florence Complex every 30 days, but his requests were ignored.

On September 13, 2011, Plaintiff filed a grievance. Two days later, he commenced

---

[6] However, elsewhere, Plaintiff indicates that he began to receive multivitamins with iron in February 2011, presumably after the transfer to Tucson.

[7] See http://www.azcorrections.gov/Inmate_DataSearch/results_Minh.aspx?InmateNumber=253160&LastName=OVERTURF&FNMI=G&SearchType=SearchInet (last visited Nov. 19, 2012).

- 6 -

this action. A day after that, he was seen by an ophthalmologist, Dr. Patel. Dr. Patel told Plaintiff that his vision was in terrible condition. Dr. Patel changed Plaintiff's Pro-Sight prescription back to Ocuvite, reinstated refills for artificial tears, and prescribed sunglasses and cataract surgery. Plaintiff received cataract surgery on November 22, 2011.

FHA Kendall thereafter responded to Plaintiff's September 13, 2011 grievance by stating that his issues had been resolved. Plaintiff contends that he suffered permanent vision loss, which Dr. Patel found when he examined Plaintiff. On January 8, 2012, Director Ryan denied Plaintiff's grievance appeal stating that Plaintiff's health needs were being met.

On January 5, 2012, Plaintiff was examined for eyeglasses, which were to take 2-4 weeks to receive. Plaintiff filed a grievance on May 11, 2012 after he still had not received glasses. On June 4, 2012, Plaintiff received glasses, five months after they were prescribed and four months later than promised. On July 7, 2012, Ryan denied Plaintiff's grievance appeal regarding the delay in receiving glasses, as resolved.

### III. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

#### A. Medical Care

Plaintiff asserts that various Defendants violated his right to constitutionally adequate medical care. Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating

1  that failure to treat the condition could result in further significant injury or the unnecessary
2  and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.
3  Jett, 439 F.3d at 1096 (quotations omitted).

4      "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051,
5  1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know
6  of and disregard an excessive risk to inmate health; "the official must both be aware of facts
7  from which the inference could be drawn that a substantial risk of serious harm exists, and
8  he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate
9  indifference in the medical context may be shown by a purposeful act or failure to respond
10 to a prisoner's pain or possible medical need and harm caused by the indifference. Jett, 439
11 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally
12 denies, delays, or interferes with medical treatment or by the way prison doctors respond to
13 the prisoner's medical needs. Estelle, 429 U.S. at 104-05; Jett, 439 F.3d at 1096.

14     Deliberate indifference is a higher standard than negligence or lack of ordinary due
15 care for the prisoner's safety. Farmer, 511 U.S. at 835. "Neither negligence nor gross
16 negligence will constitute deliberate indifference." Clement v. California Dep't of Corr., 220
17 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter Labs., 622 F.2d 458,
18 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"
19 do not support a claim under § 1983). "A difference of opinion does not amount to deliberate
20 indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242
21 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim
22 against prison officials for deliberate indifference. See Shapley v. Nevada Bd. of State
23 Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial.
24 The action must rise to a level of "unnecessary and wanton infliction of pain." Estelle, 429
25 U.S. at 105.

26     **1.    Ryan**

27     Plaintiff sues Director Ryan. While Ryan may be sued, Plaintiff fails to state a claim
28 against him.

1    To state a claim against a defendant, "[a] plaintiff must allege facts, not simply
2 conclusions, that show that an individual was personally involved in the deprivation of his
3 civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual
4 to be liable in his official capacity, a plaintiff must allege that the official acted as a result of
5 a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188
6 (9th Cir. 2001). Further, there is no *respondeat superior* liability under § 1983, so a
7 defendant's position as the supervisor of someone who allegedly violated a plaintiff's
8 constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658,
9 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his
10 individual capacity, "is only liable for constitutional violations of his subordinates if the
11 supervisor participated in or directed the violations, or knew of the violations and failed to
12 act to prevent them." Taylor, 880 F.2d at 1045. In addition, where a defendant's only
13 involvement in allegedly unconstitutional conduct is the denial of administrative grievances,
14 the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior
15 does not amount to active unconstitutional behavior for purposes of § 1983. See Shehee v.
16 Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); accord Proctor v. Applegate, 661 F.Supp.2d 743,
17 765 (W.D. Mich. 2009); Stocker v. Warden, No. 1:07-CV-00589, 2009 WL 981323, at *10
18 (E.D. Cal. Apr. 13, 2009); Mintun v. Blades, No. CV-06-139, 2008 WL 711636, at *7 (D.
19 Idaho Mar. 14, 2008); see also Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir.
20 2006) (a plaintiff must allege that a supervisor defendant did more than play a passive role
21 in an alleged violation or mere tacit approval thereof; a plaintiff must allege that the
22 supervisor defendant somehow encouraged or condoned the actions of their subordinates).
23    Plaintiff only alleges claims against Ryan based on *respondeat superior* or on Ryan's
24 denial of grievance appeals. As discussed above, neither is a basis for liability under § 1983.
25 Accordingly, Plaintiff fails to state a claim against Ryan and he will be dismissed.
26    **2.    Swindle**
27    Plaintiff asserts that Swindle denied him constitutionally adequate medical care by
28 sending him a memorandum telling him that his prescriptions for eye vitamins, Timolol

- 9 -

1  Ophth, and Flunisolide were not refillable.[8] Plaintiff contends that he was entitled to refills
2  until the prescriptions expired on December 12, 2010.  As discussed elsewhere herein, the
3  contention that Plaintiff was entitled to refills on request absent authorization until the date
4  a prescription expired is facially implausible.  Further, Plaintiff does not allege facts to
5  support that Swindle had authority to fill Plaintiff's prescriptions absent medical
6  authorization. That is, she did not act with deliberate indifference to his medical needs if she
7  lacked the ability or authority to issue the prescriptions.  For these reasons, Plaintiff fails to
8  state a claim against Swindle and she will be dismissed.

### 3. Romero and French

Plaintiff alleges that on September 28, 2010, Nurse Romero told another inmate that she and an administrator had decided to cancel Plaintiff's prescriptions until he confessed to sex crimes that he had never committed and which he had never been charged or convicted of committing. (Doc. 38 at 3B.)  According to Plaintiff, Romero told the other inmate that Plaintiff had a choice of going blind or confessing to being a child molester. (Id.)  Plaintiff claims that, as a result, he was denied medications for five weeks by Romero and French based on their "misguided opinions."[9]  According to Plaintiff, in beginning in December 2010, Nurse French brought false paperwork to the Lewis Complex, and subsequently brought "false paperwork" to the Tucson Complex in March 2011, and to the Florence Complex in May 2011.

Plaintiff asserts that he did not receive medications for five weeks as a result of Romero's threats, but he identifies those periods as August 10-27, 2010 and September 5-28,

---

[8] Plaintiff also asserts that Swindle denied him prescribed medications based on statements made by Romero or French. However, Plaintiff fails to allege any facts to support that Swindle had any knowledge of such statements or that she issued the memorandum for any reason other than the lack of authorization for refills.

[9] As noted above, Plaintiff also asserted Swindle denied him medications based on Romero's statements, without alleging facts to support that Swindle had any knowledge of Romero's statements.  Moreover, Swindle issued the memorandum telling Plaintiff that certain medications were refillable *before* Romero made the alleged statements.

1  2010, i.e., prior to Romero's alleged threat or any act by French; and November 21-27, 2010,
2  well after Romero's alleged threat, and also prior to any act by French. Plaintiff fails to
3  allege facts to support that Romero, or anyone else, denied him medications based on
4  Romero's statements or threats. Accordingly, these allegations will be dismissed.

With respect to French, Plaintiff fails to describe the allegedly false paperwork provided by Nurse French or to allege facts to support that provision of such false paperwork in any way resulted in the denial of medical care. Plaintiff makes only vague and conclusory assertions. Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. Ivey v. Board of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Id. Accordingly, Plaintiff also fails to state a claim against French.[10]

### 4. Valenzuela and Kendall

Plaintiff also alleges that FHAs Valenzuela and Kendall denied him constitutionally adequate medical care. Plaintiff alleges that FHA Valenzuela denied his grievance concerning the denial of a prescription for multivitamins without iron. Plaintiff has not alleged facts to support that Valenzuela did so knowing that the denial of his grievance posed an excessive risk to Plaintiff's health or was medically unacceptable. Otherwise, the mere denial of a grievance, absent more, is not sufficient to state a claim. Accordingly, Plaintiff's allegations against Valenzuela will be dismissed for failure to state a claim.

Plaintiff alleges that, at some point, Kendall opined that Plaintiff's vision had not been

---

[10] To the extent that Plaintiff complains of disparaging remarks made by Romero or French, he fails to state a claim. Verbal harassment or abuse, absent more, is insufficient to state a violation of a constitutional right under § 1983. Oltarzewski v. Ruggiero, 830 F. 2d 136, 139 (9th Cir. 1987); see Corales v. Bennett, 567 F.3d 554 (9th Cir. 2009) (citing Gaut v. Sunn, 810 F.2d 923 (9th Cir. 1987)) (verbal threats alone do not create a cause of action under § 1983 nor are they "prohibited by the Constitution" because they are not "equivalent to doing the act itself.").

1  damaged by delays in receiving prescriptions. Plaintiff also alleges that Kendall found
2  Plaintiff's grievance had been resolved after Plaintiff was seen by Dr. Patel. As with
3  Valenzuela, Plaintiff predicates his allegations against Kendall on the denial of his
4  grievances, which is not sufficient to state a claim against Kendall. Plaintiff does not allege
5  facts to support that Kendall acted with deliberate indifference to Plaintiff's serious medical
6  needs merely because Kendall denied Plaintiff's grievance appeals after he was seen by Dr.
7  Patel. Accordingly, Plaintiff's allegations against Kendall will also be dismissed.

8  **B.    Due Process**

9  Plaintiff designates Count II as a claim for violation of his Fourteenth Amendment
10 rights to due process and equal protection based on Defendant Chavez's failures to respond
11 to his requests or grievances while Plaintiff was in the Bachman Detention Unit, between
12 August 11, 2010 and December 1, 2010. The Court construes Count II to allege the denial
13 of access to the courts by denying indigent legal supplies and a denial of the right to petition
14 for redress of grievances.

15 **1.    Access to the Courts**

16 The right of meaningful access to the courts prohibits state officials from actively
17 interfering with an inmate's attempt to prepare or file legal documents. Lewis v. Casey, 518
18 U.S. 343, 350 (1996). That right, however, only encompasses the ability to bring petitions
19 or complaints to federal court and not to discover or even effectively litigate such claims
20 once filed with a court. Id. at 354; see also Cornett v. Donovan, 51 F.3d 894, 899 (9th Cir.
21 1995) ("The right of access is designed to ensure that a habeas petition or civil rights
22 complaint of a person in state custody will reach a court for consideration."). The right
23 "guarantees no particular methodology but rather, the conferral of a capability – the
24 capability of bringing contemplated challenges to sentences or conditions of confinement
25 before the courts." Lewis, 518 U.S. at 356. Further, the denial of access to a paralegal or use
26 of a law library is not actionable if there is no claim of prejudice to an existing or future legal
27 action. Id. at 351-53. That is, an inmate must establish that he suffered an "actual injury."
28 See Vandelft v. Moses, 31 F.3d 794, 797 (9th Cir. 1994). An "actual injury" is "actual

prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." Lewis, 518 U.S. at 348. In other words, a plaintiff must allege facts to support that a defendant's conduct prevented him from bringing to court a non-frivolous claim that he wished to present. Id. at 351-53. A plaintiff "must identify a nonfrivolous, arguable underlying claim," and this underlying claim "must be described in the complaint." Christopher v. Harbury, 536 U.S. 403, 414-15 (2002).

Plaintiff alleges that he is an indigent inmate working on his appeal. (Doc. 38 at 4.) He was moved to Bachman Detention Unit on August 11, 2010, where Chavez worked. Plaintiff states that when he requested indigent status in accordance with prison rules so that he could write to his attorney, his requests were ignored, as were his grievances about the lack of response to his request for indigent status.

Plaintiff fails to allege *facts* to support that he was actually injured with respect to any pending or prospective litigation.[11] Plaintiff was clearly able to commence and litigate this action. Because Plaintiff fails to allege facts to support that he was prevented from filing a meritorious claim in state or federal court, he fails to state a claim for denial of access to the courts by the denial of legal supplies. Accordingly, he fails to state a claim in Count II on that basis.

### 2. Redress of Grievances

Although "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure," Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); the right of meaningful access to the courts extends to established prison grievance procedures. Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), abrogated on other grounds by Shaw v. Murphy, 532 U.S.

---

[11] According to records available on-line, a direct appeal was filed on Plaintiff's behalf by counsel and was denied in March 2012. A criminal defendant is not constitutionally entitled to access to a law library or other legal assistance in connection with his criminal proceedings where he is already represented by counsel in those proceedings. See United States v. Wilson, 690 F.2d 1267, 1271-72 (9th Cir. 1982) ("The offer of court-appointed counsel to represent [a defendant] satisfied the Fifth Amendment obligation to provide meaningful access to the courts.").

1  223 (2001); Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989). The "government" to which the First Amendment guarantees a right to petition for redress of grievances includes prison authorities. Hall, 64 F.3d at 1279 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989)).

Plaintiff does not allege that he was unable to submit grievances, i.e., that he was denied access to an established prison grievance procedure. Rather, he alleges that Chavez failed to respond to his grievances. Absent more, that is insufficient to state a claim for denial of the right to petition for redress of grievances. Accordingly, Plaintiff also fails to state a claim for denial of the right to petition for redress of grievances.

## IV.    Dismissal without Leave to Amend

Because Plaintiff has failed to state a claim in his Second Amended Complaint, the Court will dismiss his Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. Sisseton-Wahpeton Sioux Tribe v. United States, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. Moore, 885 F.2d at 538.

Plaintiff has made three efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)    Plaintiff's Second Amended Complaint (Doc. 38) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2)    Plaintiff's motions are **denied**. (Doc. 39-42.)

(3)    The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

1  (4) The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 26th day of November, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge